IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNIFIED SYSTEM DIVISION BMWED-IBT<br><br>      Plaintiff,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, et al.,<br><br>      Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING UNION PACIFIC'S MOTION TO DISMISS COUNT THREE OF THE COMPLAINT**<br><br>Case No. 2:21-cv-00700-JNP-JCB<br><br>District Judge Jill N. Parrish<br><br>Magistrate Judge Jared C. Bennett |

This case arises from allegations by Unified System Division BMWED-IBT ("the Union" or "Unified System Division") that enforcement of the federal government's Covid-19 vaccine mandate for federal contractors ("Contractor Mandate") violates state and federal law. Before the court is Union Pacific Railroad Company's ("Union Pacific") motion to dismiss count three of the complaint for lack of subject matter jurisdiction and/or failure to state a claim. For the following reasons, the court GRANTS Union Pacific's motion.

**FACTUAL BACKGROUND**

I.   **PARTIES AND ALLEGATIONS**

   The Union is an unincorporated labor organization. It is an affiliate of the Brotherhood of Maintenance of Way Employee Division ("BMWED") of the International Brotherhood of Teamsters ("IBT"). The Union represents more than 3,800 of the 27,000 BMWED employees

who work for Union Pacific. Of the represented employees, 303 live in Utah and 390 live in Nebraska.

The Union names a series of federal government officials as defendants in their official capacities ("Federal Defendants"). The Union alleges that the Federal Defendants exercised their power in violation of the Tenth Amendment by compelling federal contractors to receive the Covid-19 vaccination (count one). The Union further alleges that the Federal Defendants failed to conduct notice and comment on the Contractor Mandate and acted arbitrarily and capriciously in adopting the Contractor Mandate (count two).

The Union also names Union Pacific as a defendant. Union Pacific is a Class I railroad that provides freight transportation services in the western half of the United States, including Utah. Union Pacific is a corporation formed under Delaware law with its principal place of business in Nebraska. It contracts with the federal government.

The Union alleges one count against Union Pacific (count three). Specifically, the Union alleges that Union Pacific has acted in excess of its powers under Utah law in mandating that its employees receive a Covid-19 vaccine. The Union seeks (1) a judicial declaration that Union Pacific's vaccine mandate violates Utah law and (2) preliminary[1] and permanent injunctive relief prohibiting Union Pacific from enforcing the Contractor Mandate in Utah.

## II.     THE CONTRACTOR MANDATE

On September 9, 2021, President Biden issued Executive Order 14042, requiring all federal contractors to comply with any guidance published by the Safer Federal Workforce Task Force regarding the Covid-19 pandemic. On September 24, 2021, the Task Force issued guidance requiring all covered employees of federal contractors to be fully vaccinated against the

---

[1] The Union has yet to move for preliminary injunctive relief.

Covid-19 virus by December 8, 2021. The guidance instructed that covered contractors must provide accommodations to employees for medical and religious reasons. The Contractor Mandate preempts contrary state law.

On October 11, 2021, Union Pacific issued a notice to employees that it would comply with the vaccination requirement. On November 10, 2021, the Task Force extended the vaccination deadline from December 8, 2021 to January 18, 2022.

The Contractor Mandate has engendered significant litigation. Courts have enjoined enforcement of the Mandate in a number of states, *see Kentucky v. Biden*, No. 3:21-cv-55, 2021 WL 5587446 (E.D. Ky. Nov. 30, 2021) (Kentucky, Ohio, and Tennessee), *Missouri v. Biden*, No. 4:21-cv-1300, 2021 WL 5998204 (E.D. Mo. Dec. 20, 2021) (Missouri, Nebraska, Alaska, Arkansas, Iowa, Montana, New Hampshire, North Dakota, South Dakota, and Wyoming), and *Florida v. Nelson*, No. 8:21-cv-2524, 2021 WL 6108948 (M.D. Fla. Dec. 22, 2021) (Florida), and nationwide, *see Georgia v. Biden*, No. 1:21-cv-163, 2021 WL 5779939 (S.D. Ga. Dec. 7, 2021). Following the nationwide injunction issued by the Southern District of Georgia, Union Pacific issued another notice to employees stating that it would be "complying with the temporary suspension of the federal contractor vaccine mandate." ECF No. 37-2 at 9.

The Union filed this case on November 29, 2021.

## LEGAL STANDARD

Union Pacific moves to dismiss count three under both Rule 12(b)(1) and Rule 12(b)(6). "Federal Rule[] of Civil Procedure Rule 12(b)(1) allows a court to dismiss a complaint for lack of subject matter jurisdiction." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). A party's motion to dismiss under Rule 12(b)(1) takes one of two forms: a facial challenge (focusing only on the complaint's allegations) or a factual challenge (producing materials outside

3

the complaint to establish jurisdictional facts). *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995), *abrogated on other grounds by Cent. Green Co. v. United States*, 531 U.S. 425, 437 (2001). When reviewing a facial challenge, the court must take the complaint's allegations as true. *Id.* at 1002. But if a defendant challenges jurisdiction based on facts outside the complaint, the court "may not presume the truthfulness of the complaint's factual allegations." *Id.* at 1003. Instead, the court evaluates the evidence of jurisdictional facts. In doing so, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing." *Id.*

Dismissal of a claim under Rule 12(b)(6) is appropriate where the plaintiff fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). When considering a motion to dismiss for failure to state a claim, a court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).

## ANALYSIS

I.   **SUBJECT MATTER JURISDICTION**

"[F]ederal subject matter jurisdiction is elemental," and it "must be established in every cause under review in the federal courts." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (citation omitted). Because "federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction." *Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991). Consequently, the party invoking federal jurisdiction bears the burden of establishing subject matter jurisdiction. *Marcus v. Kan. Dep't of Revenue*, 170 F.3d

4

1305, 1309 (10th Cir. 1999). If the court lacks jurisdiction, it must dismiss the action. *Safe Sts.*, 859 F.3d at 878.

There are three pathways to establish subject matter jurisdiction: federal question jurisdiction, diversity jurisdiction, or supplemental jurisdiction. The court finds that the Union has not established jurisdiction under any method.

### A.   *Federal Question Jurisdiction*

In order for this court to exercise federal question jurisdiction over a cause of action, a "right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 10-11 (1983); *see also* 28 U.S.C. § 1331. The third cause of action against the Union raises no such right or immunity. Rather, it alleges only a violation of Utah law. Accordingly, the court has no federal question jurisdiction over count three.

### B.   *Diversity Jurisdiction*

Jurisdiction premised on diversity requires complete diversity among the parties and that the amount in controversy exceed $75,000. *See* 28 U.S.C. § 1332. Complete diversity means that no plaintiff and no defendant are citizens of the same state. *Wisc. Dep't of Corrs. v. Schacht*, 524 U.S. 381, 388 (1998). For individuals, citizenship is synonymous with domicile. *See Vlandis v. Kline*, 412 U.S. 441, 454 (1973). A corporation, on the other hand, is deemed a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). But "[w]hile humans and corporations can assert their own citizenship, other entities take the citizenship of their members." *Americold Realty Tr. v. Conagra Foods, Inc.*, 577 U.S. 378, 379 (2016). Therefore, under what has been dubbed the *Chapman* or *Carden* Rule "an unincorporated entity's

5

citizenship is typically determined by its members' citizenship." *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905-06 (10th Cir. 2015) (citing *Chapman v. Barney*, 129 U.S. 677 (1889) and *Carden v. Arkoma Assocs.*, 494 U.S. 185, 189, 195-96 (1990)). The Supreme Court extended the rule to unincorporated labor unions in *United Steelworkers of America, AFL-CIO v. R.H. Bouligny, Inc.*, 382 U.S. 145, 146-47 (1965) (holding that the citizenship of an unincorporated labor union for purposes of diversity jurisdiction is determined by the citizenship of each of its members).

Union Pacific is a corporation. Union Pacific is incorporated in Delaware and has its principal place of business in Nebraska. Accordingly, Union Pacific is a citizen of both Delaware and Nebraska.

The Union is an unincorporated labor union. Union Pacific argues that this fact renders the Union a citizen of each state in which one of its members resides. Because the Union represents members in Nebraska, Union Pacific contends that no diversity of citizenship exists. The Union, on the other hand, contends that it filed this lawsuit only on behalf of its members who live in Utah. Moreover, it argues that the court should look only to the "citizenship of real parties to the controversy." See *N.A.A.C.P. v. Acusport Corp.*, 210 F.R.D. 446, 458 (E.D.N.Y. 2002) (quoting *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980)). Because, the Union claims, the real parties in interest are the Union's members who reside in Utah—not those living in other states, such as Nebraska—the court should consider the Union a citizen solely of Utah.

   i.  **Citizenship of Local Labor Unions**

As a baseline rule, courts determine a labor union's citizenship according to the citizenship of the union's members. *See, e.g.*, *United Food & Com. Workers Union, Local 919, AFL-CIO v. CenterMark Props. Meridian Square, Inc.*, 30 F.3d 298, 302 (2d Cir. 1994) ("[T]he

6

citizenship of an unincorporated association, such as a labor organization, is determined by the citizenship of *each* of its members."); *Loss v. Blankenship*, 673 F.2d 942, 949 (7th Cir. 1982) ("The citizenship of a union for diversity purposes is the citizenship of each of its members."); *Riordan v. Am. Fed'n of Gov't Emps., AFL-CIO*, No. 01 CIV. 1136 (SAS), 2001 WL 1352464, at *2 n.1 (S.D.N.Y. Nov. 1, 2001) ("For diversity purposes, labor unions are not citizens at all, thus requiring a court to look to the citizenship of each member of the union.").

However, courts have allowed local unions acting as plaintiffs or defendants to proceed based on the citizenship of the local union's members, not the larger international union's members. *See CenterMark*, 30 F.3d at 302 ("Where the injury alleged in the complaint is a 'particularized one,' affecting only the workers of a local union, however, a federal court may look exclusively to the citizenship of the local's membership to determine citizenship." (citation omitted)). But in order to proceed on this theory, the labor union named in the caption must be the local union. *See Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. ConocoPhillips Co.*, No. cv-08-2068, 2009 WL 1652975, at *2 (C.D. Cal. June 11, 2009) (rejecting contention that the court "may look exclusively to the citizenship of the local union's membership because the injury alleged is a 'particularized one' affecting only local members" because "no cases . . . support [that] argument where, as here, the international union is the named party in the action"). If the larger union body is named in the caption, the court must look to the citizenship of the larger body's members, irrespective of the particularized nature of the alleged injury.

Indeed, the foremost Supreme Court case on diversity citizenship for labor unions, in which the plaintiffs named United Steelworkers as a defendant, held that the union's citizenship was that of each of its international members even where the action was originally brought in

7

North Carolina state court by a North Carolina corporation in a suit for defamation pursuant to state law. *See Bouligny,* 382 U.S. at 146. It follows, then, that the court must look to the citizenship of each of the members of the named organization—even if the claim pertains to a particularized injury under state law.

The Union is an affiliate of the Brotherhood of Maintenance of Way Employees Division of the International Brotherhood of Teamsters. ECF No. 2 ¶ 7. Courts have not determined whether an affiliate is more akin to a local lodge or international union for purposes of determining citizenship. But the court need not resolve that question here. Even if the court treats the Union as a local lodge and declines to look at the citizenship of members of the larger International Brotherhood of Teamsters or Brotherhood of Maintenance of Way Employees Division, it still must consider the citizenship of each member of the entity listed in the caption (here, Unified System Division). Indeed, the Union identifies no court that has allowed a labor union to define its citizenship based only on a subset of a local union's membership. In other words, even where a court identified a "particularized" injury, it still looked to the entire membership of the local union in order to determine the union's citizenship. *See, e.g.*, *CenterMark*, 30 F.3d at 302 (remanding the case for the district court to determine the citizenship of the local's membership). And here, United System Division has members who are citizens of Nebraska. Accordingly, precedent regarding the citizenship of labor unions, including local labor unions, suggests that the court should consider the citizenship of each member of the named plaintiff-Union, which includes members in Nebraska.

        ii.      **Application of *N.A.A.C.P. v. Acusport Corp.***

To rebut this position, the Union points to *N.A.A.C.P. v. Acusport Corp.*, 210 F.R.D. 446 (E.D.N.Y. 2002). There, the NAACP sued on behalf of itself and its members, seeking an

injunction to prevent an alleged public nuisance of the improper sale and distribution of guns. *Id.* at 450-51. The district court determined that, insofar as the NAACP sued in its representative capacity, it traditionally would be considered a citizen of each state in which a member resided. *Id.* at 458. However, because the NAACP has members in all fifty states, the court determined that complete diversity would be "impossible" under the traditional rule. *Id.* at 462. In order to "eliminate[] the diversity problem" the court limited the citizenship of the NAACP to its New York members because the lawsuit focused on "harm suffered by New York members." *Id.*

The Union analogizes to *N.A.A.C.P.* to argue that "[t]he real parties in interest here are Plaintiff's members who reside in Utah and who are challenging Union Pacific's vaccine mandate under Utah law." ECF No. 47 at 12. But at least one circuit has already rejected this argument. The Eleventh Circuit held that "[a] federal court . . . may not avoid the *Carden* rule[2] simply by characterizing one member of an unincorporated association as the only 'real party to the controversy.'" *Underwriters at Lloyd's v. Osting-Schwinn*, 613 F.3d 1079, 1088 (11th Cir. 2010). As the Eleventh Circuit points out, the dissent in *Carden* advocated this approach, and the majority explicitly rejected it. *Id.* (citing *Carden*, 494 U.S. at 188 n.1, 195, 200 ("The dissent fails to cite a single case in which the citizenship of an artificial entity . . . has been decided by application of the 'real party to the controversy' test that it describes.")). Moreover, Supreme Court precedent is clear. The Supreme Court explicitly "reject[s] the contention that to determine, for diversity purposes, the citizenship of an artificial entity, the court may consult the citizenship of less than all of the entity's members." *Carden*, 494 U.S. at 195. Instead, the Court "adhere[s] to our oft-repeated rule that diversity jurisdiction in a suit by or against the entity

---

[2] As noted above, "*Carden* articulated a general rule: *every* association of a common-law jurisdiction other than a corporation is to be treated like a partnership." *Ind. Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 317 (7th Cir. 1998).

9

depends on the citizenship of 'all the members,' *Chapman*, 129 U.S. at 682, 'the several persons composing such associations,' *Great Southern*, 177 U.S. at 456, 'each of its members,' *Bouligny*, 382 U.S. at 146." *Id.* at 195-96.

Indeed, a close reading of the Supreme Court precedent cited by the *N.A.A.C.P.* court belies its application here. *N.A.A.C.P.* cites to *Navarro Savings Association v. Lee*, 446 U.S. 458 (1980), for the proposition that "[t]he test for determining the existence of diversity jurisdiction is generally 'the citizenship of the real parties to the controversy.'" 210 F.R.D. at 458. In *Navarro*, the Supreme Court addressed the subject of diversity jurisdiction over business trusts. The Court held that the citizenship of the business trust's beneficiaries, who had little power to control the trust, was not relevant to the personal jurisdiction determination. *Id.* at 464-66. Rather, the citizenship of the trustees, who retained the power to hold, manage, and dispose of assets, was the only relevant citizenship for the purposes of determining diversity jurisdiction. *Id.*

But the *Navarro* Court explicitly rejected application of its holding to labor unions or other kinds of unincorporated associations. *See id.* at 462 ("[T]his case involves neither an association nor a corporation."). Indeed, the majority noted that while "[t]here is a 'rough symmetry' between the 'real party in interest' standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy[,] the two rules serve different purposes and need not produce identical outcomes in all cases." *Id.* at 462 n.9. The Supreme Court continued, holding that "[i]n appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17(a)." *Id.* Nevertheless, [t]o establish diversity . . . the union must rely upon the citizenship of *each* of its members." *Id.* (emphasis added). Accordingly, the court finds the reasoning in *N.A.A.C.P.* unpersuasive in the context of a labor union.

10

In sum, this court follows clearly established precedent by considering "each of the members" of United System Division to determine its citizenship. The Union has members in Nebraska. Therefore, the Union is a citizen of Nebraska. Union Pacific is also a citizen of Nebraska. Thus, there is simply no complete diversity between the Union and Union Pacific. Accordingly, the court cannot exercise diversity jurisdiction over count three.

C.  *Supplemental Jurisdiction*

The court may also exercise supplemental jurisdiction over claims that form "part of the same case or controversy" as the claims on which original federal jurisdiction is based. 28 U.S.C. § 1367(a). Courts often invoke supplemental jurisdiction to allow the consolidation of state law claims with transactionally related federal claims in non-diversity cases. *See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1220 (10th Cir. 2000) ("Once federal question jurisdiction exists, it is within the trial court's discretion to exercise supplemental jurisdiction over those state law claims that derive from a common nucleus of facts."). However, "[t]he doctrine of supplemental jurisdiction is 'a doctrine of discretion, not of plaintiff's right.'" *Strain v. Regalado*, 977 F.3d 984, 997 (10th Cir. 2020) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). And the court may "decline to exercise supplemental jurisdiction . . . if the claim raises a novel or complex issue of State law [or] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1), (3).

The court has jurisdiction over the Union's claims against the Federal Defendants based on federal question jurisdiction. The Union's claims against the Federal Defendants under the Tenth Amendment and the Administrative Procedure Act raise federal questions. *See* 28 U.S.C. § 1331. These claims attempt to prevent the Federal Defendants from enforcing the Contractor Mandate in Utah, either on the grounds that it violates the Tenth Amendment or on the grounds

11

that the Mandate is arbitrary and capricious. The claim against Union Pacific also arises from the Contractor Mandate but focuses on the legality of its enforcement under Utah law. Because all three claims stem from the Contractor Mandate, the court could exercise supplemental jurisdiction over the Union's state law claim.

But the court declines to do so. Although the claims arise from some common facts, they raise entirely different legal questions. While the federal claims deal with whether the Federal Defendants exceeded their power and whether they acted arbitrarily in promulgating the Contractor Mandate, the state claim pertains solely to whether state law grants or withholds power for Union Pacific to enforce a Covid-19 vaccine mandate. Therefore, there is no efficiency gain to litigating the claims together. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (instructing federal courts to consider "judicial economy," among other factors, in deciding whether to exercise pendant jurisdiction—now codified as supplemental jurisdiction—over state-law claims).

And, importantly, the claim against Union Pacific raises interesting and novel questions about the scope of Utah's Covid-19 vaccination statute. Indeed, the state law in this area continues to develop. During the pendency of this litigation, the Utah legislature passed House Bill 63, which amended the Covid-19 vaccine exemption law to include federal contractors as employers, among other changes. Governor Cox signed this bill into law on March 22, 2022. Unsurprisingly, Utah courts have yet to interpret this new law. The same goes for its predecessor, which was in place at the time the Union filed the complaint. At bottom, Utah courts have given this court no guidance on the scope of the relevant provision. *Gibbs*, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring them a surer-footed reading of applicable law.").

Moreover, there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(4). Specifically, the case raises delicate privacy concerns governed by an evolving area of state law. The Tenth Circuit previously applied § 1367(c)(3) to decline to exercise supplemental jurisdiction in an analogous case. In *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221 (10th Cir. 1997), a plaintiff opposed an employer's policy requiring the plaintiff to disclose prescription drug use to the employer. In addition to federal claims, the plaintiff asserted a state law claim asserting that the prescription drug disclosure policy violated her right of privacy. *Id.* at 1226-27. But the Tenth Circuit declined to exercise supplemental jurisdiction because "there are other compelling reasons for declining to exercise supplemental jurisdiction since this delicate privacy law area is in transition." *Id.* at 1237. Vaccine mandates, as well as prohibitions on vaccine mandates, similarly represent a delicate area of law that touches on matters of privacy and employers' ability to monitor an employee's health care decisions. And, as noted above, this is an area of law that is in transition in Utah. Accordingly, the sensitive and developing nature of the law in this area favors remand to the state court.

Because the Union's claims touch on sensitive and novel issues of state law, the court defers to Utah state courts to interpret the proper scope of the state's Covid-19 vaccine exemption law in the first instance.

*     *     *

Because the court cannot exercise federal question or diversity jurisdiction, and because the court declines to exercise supplemental jurisdiction, this court lacks subject matter jurisdiction over the Union's third cause of action and must dismiss this action. Accordingly, the court GRANTS Union Pacific's motion to dismiss for lack of subject matter jurisdiction.

## II. FAILURE TO STATE A CLAIM

Because the court must dismiss this case for lack of subject matter jurisdiction, the court DISMISSES AS MOOT Union Pacific's motion to dismiss for failure to state a claim.

## CONCLUSION AND ORDER

The court DISMISSES WITHOUT PREJUDICE the Union's third count against Union Pacific.

DATED June 16, 2022.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge